FILED

JUN 13 2019

U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.                             Criminal Action Nos. 5:18CR16-01-02
                                          (STAMP)

KRISHAN KUMAR AGGARWAL
and CHERIAN JOHN,

        Defendants.

## **JURY INSTRUCTIONS**

### I.  Introduction

Now that you have heard the evidence and the closing statements by the lawyers, it is my job to tell you about the laws that apply to this case.  As jurors, you have two jobs.  First, you must determine from the evidence what the facts of this case are.  Second, you must apply the rules of law that I will give you to those facts in order to determine the innocence or guilt of Krishan Kumar Aggarwal and Cherian John with respect to the crimes charged against them in the indictment.

I will be sending a copy of these instructions to the jury room; however, you are not to single out any one instruction as stating the law, but must consider the instructions as a whole.

Also, you are not to be concerned with the wisdom of any rule of law stated by the Court.  Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base a verdict upon any other view of the law than

that given in the instructions of the Court; just as it would be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything but the evidence in the case.

You have been chosen and sworn as jurors in this case to try the issues of fact presented by the allegations of the indictment and the denials made by the "not guilty" plea of the accused. You are to perform this duty without bias or prejudice as to any party. The law does not permit jurors to be governed by sympathy, prejudice, or public opinion. The accused and the public expect that you will carefully and impartially consider all of the evidence in the case, follow the law as stated by the Court and reach a just verdict, regardless of the consequences.

The law presumes the defendants to be innocent of a crime. So, the defendants, although accused, begins the trial with a "clean slate" -- with no evidence against them. This presumption was with the defendants when the trial began and remains with them even now as I speak to you and will continue with them into your deliberations unless you are convinced that the government has proven their guilt beyond a reasonable doubt. The law permits nothing but legal evidence presented before the jury to be considered in support of the charge against the accused. So the presumption of innocence alone is sufficient to acquit the defendants, unless the jurors are satisfied beyond a reasonable doubt of either defendant's guilt on a particular count in the

indictment after careful and impartial consideration of all the evidence in the case.

It is not required that the government prove guilt beyond all possible doubt.  The test is one of reasonable doubt.

You will remember that a defendant in this case is never to be convicted on mere suspicion or conjecture.

The burden is always upon the government to prove guilt beyond a reasonable doubt.  This burden never shifts to a defendant; the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

## II.  Evidence Generally

There are two types of evidence from which a jury may properly find a defendant guilty of a crime.  One is direct evidence — such as the testimony of an eyewitness.  The other is circumstantial evidence — the proof of a chain of circumstances pointing to the commission of the offense.

As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that, before convicting a defendant on a particular count in the indictment, the jury be satisfied of that defendant's guilt beyond a reasonable doubt from all the evidence as to that claim.

Common sense is no substitute for evidence, but common sense should be used by you to evaluate what reasonably may be inferred from circumstantial evidence.  Therefore, you are permitted to use

your common sense in evaluating all the evidence, including circumstantial evidence, which the government has presented to you in an attempt to prove beyond a reasonable doubt the guilt of the defendants, Krishan Kumar Aggarwal or Cherian John, as to the claims against either of them.

The evidence in the case consists of the sworn testimony of the witnesses, regardless of who may have called them; all exhibits received in evidence, regardless of who may have produced them; and all facts which were admitted.

Statements and arguments of counsel are not evidence in the case, unless they were made as an admission or stipulation of fact.

As I have mentioned earlier in the trial, an indictment is just a formal method of accusing a defendant of a crime. It is not evidence of any kind against the accused and does not create any presumption or permit any inference of guilt.

Any evidence as to which an objection was sustained by the Court, and any evidence ordered stricken by the Court, must be entirely disregarded, or considered only for the limited purposes for which the evidence was admitted.

Anything you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.

You are to consider only the evidence in the case. But in your consideration of the evidence, you are not limited to the mere statements of the witnesses. In other words, you are not

limited solely to what you see and hear as the witnesses testify. You are permitted to draw, from the facts which you find have been proven, such reasonable inferences as you feel are justified in light of your experience.

### III.   Witnesses

You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves.

You are free to believe all, a portion, or none of a witness's testimony.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief.  Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor and manner while on the stand.  Consider the witness's ability to observe the matters as to which he or she has testified, and whether he or she impresses you as having an accurate recollection of these matters.  Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness's testimony is either supported or contradicted by the evidence in the case.

Inconsistencies or discrepancies in the testimony of any witness, or between the testimony of different witnesses, may or may not cause you, the jury, to discredit such testimony.  Two or

more persons witnessing an incident or a transaction may see or hear it differently.  Innocent misrecollection, like failure of recollection, is not an uncommon experience.  In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail and whether the discrepancy results from innocent error or intentional falsehood.

The testimony of a witness may be discredited or impeached by showing that the witness previously made statements which are inconsistent with the witness's present testimony.  The earlier contradictory statements are admissible only to impeach the credibility of the witness, and not to establish the truth of these statements.  It is the province of the jury to determine the credibility, if any, to be given to the testimony of a witness who has been impeached.

If a witness is shown to have knowingly testified falsely concerning any material fact, you have a right to distrust such witness's testimony in other particulars; and you may reject all of the testimony of that witness or give it such credibility as you may think it deserves.

The jury must determine whether the testimony of a witness has been affected by self-interest or immunity from prosecution, by prejudice or bias against a defendant, or by any agreements reached with the government.  The testimony of someone who provides evidence in the hope of receiving a lesser sentence must be

examined and weighed by the jury with greater care than the testimony of a witness who is not so motivated.

Although a witness may have testified in this trial under a plea agreement with the government in which that witness agreed to testify truthfully, the plea agreement signed by such witness is no guarantee of truthful testimony. You, the jury, are still the final judges of whether the testimony given by any witness in this case was truthful or not. In determining such truthful testimony, you may rely on the factors I have previously given you concerning the evaluation of witness testimony in general.

It is within the discretion of the government to enter into plea agreements with certain parties who have testified during this trial. However, the jury has the ability to consider the credibility of those witnesses and should consider their testimony with caution and great care.

The testimony of an informant — a witness who provides evidence against a defendant for personal advantage or vindication — must be examined by the jury with greater care and caution than the testimony of an ordinary witness. The jury must determine whether the informant's testimony has been affected by any interest in the case or by any prejudice against a defendant. You should consider such testimony with caution and weigh it with great care.

There has been evidence introduced at the trial that the parties called as witnesses persons who were using or were addicted

to illegal drugs when the events he or she observed took place. There is nothing improper about calling such a witness to testify about events within his or her personal knowledge.

On the other hand, his or her testimony must be examined with greater scrutiny than the testimony of any other witness. The testimony of a witness who was using drugs at the time of the events he or she is testifying about may be less believable because of the effect the drugs may have on his or her ability to perceive or relate the events in question.

If you decide to accept his or her testimony, after considering it in light of all the evidence in this case, then you may give it whatever weight, if any, you find it deserves.

You have heard expert witness testimony in this case from Dr. Standiford Helm, II, Dr. James Patrick Murphy, Dr. Stephen Thomas, and Vickie Willard. An expert witness is allowed to express an opinion on those matters about which that witness has special knowledge and training. Expert testimony is presented to you on the theory that someone who is experienced in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing the testimony of the experts, you may consider the experts' qualifications, opinions, reasons for testifying, as well as all the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may

8

give the expert testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.   You should not, however, accept this witness's testimony merely because that witness is an expert.   Nor should you substitute it for your own reason, judgment, and common sense.   The determination of the facts in this case rests solely with you.

In considering the testimony of witnesses who are agents of the government, you may not give more weight to the testimony of agents of the government than you give to the testimony of other witnesses for the mere reason that the witness is an agent of the government.

A law enforcement agent who takes the witness stand subjects his or her testimony to the same examination and the same tests that any other witness does.   In considering the testimony of a law enforcement agent, you, the jury, should recall his or her demeanor on the stand, their manner of testifying, the substance of the witness's testimony and then weigh and balance his or her testimony just as carefully as you would the testimony of any other witness.

As you know, there are two defendants being tried together in this case.   Therefore, you must be careful to give separate consideration to the evidence supporting each charge against each individual defendant.

Your decision on the facts of this case should not be determined by the number of witnesses testifying for or against a

party.  You should consider all of the facts and circumstances in evidence to determine which of the witnesses you choose to believe or not believe.  You may find that the testimony of a smaller number of witnesses on one side is more credible than the testimony of a greater number of witnesses on the other side.

A defendant is not on trial for any acts or crimes not alleged in the indictment.  Your job is limited to deciding whether the government has proved any or all of the crimes charged.

A defendant who wishes to testify is a competent witness, and the defendant's testimony is to be judged in the same way as that of any other witness.

I remind you that it is up to the government to prove a defendant guilty beyond a reasonable doubt.  It is not up to a defendant to prove that he is not guilty.

IV.   The Indictment

COUNT ONE
(Conspiracy to Distribute Controlled Substances
Outside the Bounds of Professional Medical Practice)

Between in or about at least May 1, 2013 through in or about January 2018, in Hancock County, within the Northern District of West Virginia, the defendants KRISHAN KUMAR AGGARWAL and CHERIAN JOHN did knowingly, intentionally and unlawfully combine, conspire, confederate, agree and have a tacit understanding with each other and with persons known and unknown to the Grand Jury to violate Title 21, United States Code, Section 841(a).  It was a purpose and object of the conspiracy to distribute a quantity of suboxone, a Schedule III controlled substance outside the bounds of professional medical practice, all in violation of Title 21, United States Code, Sections 846, 841(b)(1)(E)(i) and 841(b)(1)(E)(iii).

10

COUNTS TWO THROUGH FOUR have been withdrawn and are not a part of this case.

<u>COUNTS FIVE THROUGH ELEVEN</u>
(Aiding and Abetting the Distribution of
Controlled Substances Outside the Bounds of
Professional Medical Practice)

On or about the dates listed in the chart below, in Hancock County, within the Northern Judicial District of West Virginia, defendant KRISHAN KUMAR AGGARWAL, aided and abetted by others known to the Grand Jury, did knowingly, intentionally and unlawfully distribute suboxone, a Schedule III controlled substance, without a legitimate medical purpose and outside the usual course of professional practice, to the individuals whose initials are listed in the chart below.

| COUNT | DATE | PATIENT |
|-------|------|---------|
| 5 | 07/30/2015 | B.O. |
| 6 | 07/30/2015 | S.C. |
| 7 | 07/14/2016 | J.P. |
| 8 | 12/29/2016 | D.S. |
| 9 | 06/22/2017 | J.B. |
| 10 | 08/03/2017 | P.N. |
| 11 | 12/28/2017 | L.D. |

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(E)(i) and 841(b)(1)(E)(iii) and Title 18, United States Code, Section 2.

<u>COUNTS TWELVE THROUGH SIXTEEN</u>
(Aiding and Abetting the Distribution of
Controlled Substances Outside the
Bounds of Professional Medical Practice)

On or about the dates listed in the chart below, in Hancock County, within the Northern Judicial District of West Virginia, defendant CHERIAN JOHN, aided and abetted by others known to the Grand Jury, did knowingly, intentionally and unlawfully distribute suboxone, a Schedule III controlled substance, without a legitimate medical purpose and outside the usual course of

professional practice, to the individuals whose initials
are listed in the chart below.

| COUNT | DATE | PATIENT |
|-------|------|---------|
| 12 | 12/29/2014 | P.E. |
| 13 | 01/19/2017 | S.H. |
| 14 | 07/27/2017 | A.M. |
| 15 | 07/27/2017 | J.B. |
| 16 | 07/27/2017 | D.C. |

All in violation of Title 21, United States Code,
Sections 841(a)(1), 841(b)(1)(E)(i) and 841(b)(1)(E)(iii)
and Title 18, United States Code, Section 2.

V.   The Statutes

Title 21, United States Code, Section 841(a)(1), cited in the

indictment, provides, in pertinent part:

"(I)t shall be unlawful for a person knowingly or
intentionally--

(1) to . . . distribute . . . a controlled
substance . . . ," except as authorized by statute.

Suboxone is a controlled substance within the meaning of the

law.

Title 21, United States Code, Section 846, cited in the

indictment, provides:

"Any person who . . . conspires to commit any
offense defined in this title shall be subject to the
same penalties as those prescribed for the offense, the
commission of which was the object of the . . .
conspiracy."

VI.   <u>Elements of the Alleged Offenses</u>

<u>COUNT ONE</u>
(Conspiracy to Distribute Controlled Substances
Beyond the Bounds of Medical Practice)

A conspiracy is an agreement between two or more persons to join together to accomplish an unlawful purpose.  It is a kind of partnership in crime in which each member becomes the agent of every other member.  In order to establish the offense charged in Count One of the indictment, the government must prove each of the following elements beyond a reasonable doubt:

FIRST:   That there was an agreement between two or more persons to unlawfully distribute suboxone as charged in Count One of the indictment;

SECOND:   That the defendants knew of this agreement or conspiracy; and

THIRD:   That the defendants knowingly and voluntarily participated in or became a part of this agreement or conspiracy.

As a matter of law, suboxone is a controlled substance as that term is used in these instructions and in the indictment and in the statute that I just read to you.

The government must prove the conspiracy came into existence during or reasonably near the period of time charged in the indictment and the defendants knowingly joined in the conspiracy within or reasonably near the same time period.

A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense.  The partners in a criminal plan must agree to pursue the

13

same criminal objective and may divide up the work, yet each is responsible for the acts of each other.

While only the defendants' acts or statements could be used to prove that defendant's membership in a conspiracy, evidence of the defendants' acts or statements may be provided by the statements of co-conspirators.

The essence of the crime of conspiracy is an agreement to commit a criminal act. But there does not have to be evidence that the agreement was specific or explicit. By its very nature, a conspiracy is clandestine and covert, thereby frequently resulting in little direct evidence of such an agreement. Therefore, the government may prove a conspiracy by circumstantial evidence. Circumstantial evidence tending to prove a conspiracy may consist of a defendant's relationship with other members of the conspiracy, the length of the association, the defendants' attitude and conduct and the nature of the conspiracy.

One may be a member of a conspiracy without knowing the full scope of the conspiracy, or all of its members, without taking part in the full range of its activities or over the whole period of its existence. The conspiracy does not need a discrete, identifiable organizational structure. The fact that a conspiracy is loosely-knit, haphazard, or ill-conceived does not render it any less a conspiracy. The government need not prove that the defendants knew all the particulars of the conspiracy or all of his co-

14

conspirators.   It is sufficient if the defendants played only a minor part in the conspiracy.   Thus a variety of conduct can constitute participation in a conspiracy.   Moreover, a defendant may change his role in the conspiracy.

Once it has been shown that a conspiracy existed, the evidence need only establish a slight connection between the defendants and the conspiracy.   The government must produce evidence to prove the defendants' connection beyond a reasonable doubt, but the connection itself may be slight, because the defendants do not need to know all of their coconspirators, understand the reach of the conspiracy, participate in all the enterprises of the conspiracy, or have joined the conspiracy from its inception.

Presence at the scene of criminal activity is material and probative in the totality of the circumstances in determining the defendants' participation in the conspiracy, but proof beyond a reasonable doubt of presence coupled with an act that advances the conspiracy is sufficient to establish participation in the conspiracy.   Mere presence at the scene of an alleged transaction or event, mere association with persons conducting the alleged activity, mere similarity of conduct among various persons and the fact that they may have associated with each other or assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy.   Also a person who has no knowledge of a conspiracy but who happens to

act in a way which advances some object or purpose of a conspiracy does not thereby become a conspirator.

Mere knowledge, acquiescence, or approval of a crime is not enough to establish that an individual is part of a conspiracy. The government must show that the defendants knew the purpose of the conspiracy and took some action indicating his participation.

Proof of an overt act (or active step) in furtherance of the conspiracy is not required to sustain a drug conspiracy conviction. Instead, the evidence is sufficient if it proves these three elements:

> FIRST:    That there was an agreement to violate the federal drug law;
>
> SECOND:   That the defendant knew of the conspiracy; and
>
> THIRD:    That the defendant knowingly and voluntarily became a part of the conspiracy.

### COUNTS FIVE THROUGH ELEVEN AND COUNTS TWELVE THROUGH SIXTEEN
(Aiding and Abetting the Distribution of
Controlled Substances Beyond the
Bounds of Medical Practice)

Dr. Aggarwal is charged in Counts Five through Eleven of the indictment with unlawful distribution of a controlled substance beyond the bounds of medical practice in violation of Title 21, United States Code, Section 841(a)(1) aided and abetted by others. Dr. John is charged in Counts Twelve through Sixteen of the indictment with unlawful distribution of a controlled substance beyond the bounds of medical practice in violation of Title 21, United States Code, Section 841(a)(1) aided and abetted by others.

With respect to each count, the government must prove each of the following elements beyond a reasonable doubt to support a guilty verdict:

> FIRST:   The defendants charged caused a controlled substance to be distributed;

> SECOND:   The defendants did so knowingly or intentionally, that is to say, that the defendants knew the substance was a controlled substance under the law; and

> THIRD:   The defendants' actions were not for a legitimate medical purpose in the usual course of medical practice or were beyond the bounds of medical practice.

No one may lawfully distribute controlled substances by prescription unless they are specifically authorized by their professional license and registered with the United States Drug Enforcement Administration ("DEA") to do so. Moreover, no one may lawfully distribute buprenorphine, also known as suboxone, by prescription for the purpose of treating drug addiction, unless they are specifically authorized by their professional license, undergo special training, and register with the DEA to do so. A practitioner who is authorized by his professional license, properly trained, and registered with the DEA to order prescriptions for buprenorphine, or suboxone, for the purpose of treating drug addiction is considered to be a "DATA-waived" practitioner. DATA is an acronym for the Drug Addiction Treatment Act of 2000. Only physicians and certain other practitioners with particular medical licenses may become DATA-waived practitioners.

17

Once a practitioner becomes DATA-waived, he may not lawfully delegate his authority to prescribe buprenorphine or suboxone to any other individuals.   While a practitioner may allow another individual to communicate a prescription for buprenorphine or suboxone to a pharmacy, only that practitioner is permitted to prescribe.   In other words, a practitioner may not give to others authority to make decisions to give a patient a prescription for buprenorphine or suboxone; to make dose changes to a prior prescription for buprenorphine or suboxone; or to override a physician's order to maintain a particular dose of buprenorphine or suboxone.   Unauthorized individuals cannot lawfully make such medical decisions instead of the physician, nor can they prescribe buprenorphine or any other controlled substance.

Title 18, United States Code, Section 2(a) provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal."



The guilt of an accused in a criminal case involving a charge of aiding and abetting may be established without proof that he personally did every act constituting the offense alleged.   The law recognizes that ordinarily anything a person can do for himself may also be accomplished by him through direction of another person as his agent, or by acting in concert with, or under the direction of another person or persons in a joint effort or enterprise.   For you

to find the defendants guilty of aiding and abetting the distribution of controlled substances, the government must prove each of the following beyond a reasonable doubt:

FIRST:   The defendants aided and abetted by others, knowingly or intentionally caused the distribution of suboxone beyond the bounds of medical practice;

SECOND:   The defendants knowingly associated with Jennifer Hess and Chris Handa for the purpose of distributing suboxone beyond the bounds of medical practice; and

THIRD:   The defendants knowingly participated in the distribution of suboxone beyond the bounds of medical practice.

It is not enough that the defendants merely associated with the person or persons who committed the crime.  The government must prove beyond a reasonable doubt that the defendants knowingly associated with and participated in the distribution of suboxone beyond the bounds of medical practice.

In order to prove that the defendants caused a controlled substance to be distributed, the government is not required to show that they actually delivered the drug to the ultimate user. Rather, the government may satisfy this element by proving beyond a reasonable doubt that the defendants wrote the prescription for the controlled substance or aided and abetted another in doing so.

### Schedule III Drugs

You have heard buprenorphine, suboxone, or subutex referred to as "Schedule III" drugs or controlled substances.  The term "schedule" is simply a classification of a controlled substance

19

based on the potential for abuse of the substance, whether the substance has accepted medical uses in treatment, and whether abuse of the substance may lead to physical or psychological dependence. Federal law regulates distribution of controlled substances based on this schedule.

In making a medical judgment concerning the right treatment for an individual patient, physicians have discretion to choose among a wide range of options. Therefore, to determine whether the defendants, Krishan Kumar Aggarwal and/or Cherian John, caused the distribution of suboxone beyond the bounds of medical practice in this case, you should examine all of their actions and the facts and circumstances in the case.

Certain types of evidence may or may not suggest that a defendant has caused the distribution of suboxone beyond the bounds of medical practice. Such evidence could include one or more of the following:

- Prescribing suboxone without an authorized person having performed a sufficient physical examination;

- Prescribing suboxone without an authorized person taking a medical history of a patient;

- Prescribing suboxone without having a doctor-patient relationship;

- Allowing unauthorized individuals to diagnose opioid use disorder and prescribe suboxone; and

- Violating an applicable professional regulation.

These examples are neither conclusive nor exhaustive, but are simply meant to give you an idea of the kind of behavior from which you might conclude that a defendant was acting beyond the bounds of medical practice. The violation of an applicable professional regulation alone, however, is not determinative of whether the defendants, Krishan Kumar Aggarwal and/or Cherian John, caused the distribution of suboxone beyond the bounds of medical practice.

Whether the government has proved beyond a reasonable doubt that the defendant, Krishan Kumar Aggarwal, conspired to distribute suboxone beyond the bounds of medical practice, as charged in Count One, or that he aided and abetted the distribution of suboxone beyond the bounds of medical practice, as charged in Counts Five through Eleven, is solely for you to decide based on the facts as you find them from all of the evidence in the case.

Whether the government has proved beyond a reasonable doubt that the defendant, Cherian John, conspired to distribute suboxone beyond the bounds of medical practice, as charged in Count One, or that he aided and abetted the distribution of suboxone beyond the bounds of medical practice, as charged in Counts Twelve through Sixteen, is solely for you to decide based on the facts as you find them from all of the evidence in the case.

In proving that a defendant unlawfully distributed a controlled substance or conspired to do so, the government need not

prove his motive.   Therefore, to support a conviction for any of the offenses alleged against a defendant, the government is only required to prove the elements of those offenses beyond a reasonable doubt, as I have instructed you.

<u>Good Faith</u>

The defendants, Krishan Kumar Aggarwal and Cherian John, assert that they treated their patients in "good faith."

A physician cannot be convicted of conspiring to unlawfully distribute suboxone or aiding and abetting the unlawful distribution of suboxone if he acted in good faith in issuing the prescription.   Good faith in this context is not merely a physician's sincere intention towards the patients who come to see him.   Rather, it involves their sincerity in attempting to conduct themselves in accordance with a standard of professional medical practice generally recognized and accepted in the country.   Thus, it indicates an observance of conduct in accordance with what the physician reasonably believed to be proper medical practice.

The defendants do not have to prove that they acted in good faith.   The burden of proof remains on the government at all times to prove to you beyond a reasonable doubt that a defendant conspired to distribute suboxone beyond the bounds of medical practice, as charged in Count One in the indictment, and aided and abetted the distribution of suboxone beyond the bounds of medical practice, as charged in Counts Five through Eleven in the

indictment as to defendant Krishan Kumar Aggarwal and Counts Twelve through Sixteen in the indictment as to defendant Cherian John.

In considering whether a defendant acted in good faith, you should consider that defendant's actions and all the facts and circumstances in the case.  If you find that a defendant acted in good faith, then you must find that defendant not guilty.

### Reliance on Public Authority

The defendants, Krishan Aggarwal and Cherian John, contend that they acted in reliance on public authority.  A defendant who commits an offense in reliance on public authority does not act knowingly; and should be found not guilty.  To be found not guilty based on reliance on public authority, a defendant must prove that each of the following three things are more likely true than not true:

> FIRST:   An agent of the United States government authorized each defendant to engage in the conduct charged against each defendant in the indictment.
>
> SECOND:   The government agent had the actual authority to grant authorization for each defendant to engage in this conduct; and
>
> THIRD:   In engaging in this conduct, each defendant reasonably relied on the agent's authorization.

In deciding this, you should consider all of the relevant circumstances, including the identity of the government official, what that official said to each defendant, and how closely each defendant followed any instructions the official gave.

<u>Federal and State Regulations Applicable to All Counts</u>

A physician's conduct may constitute a violation of applicable professional regulations, as well as applicable criminal statutes. A violation of a professional regulation does not in and of itself establish a violation of the criminal law.  You should consider the totality of that defendant's actions and the surrounding circumstances.

I will now discuss with you some of the federal and state regulations that relate to the charges in the indictment.

<u>Delegating Prescriptive Authority to Other Individuals</u>

Title 21, Code of Federal Regulations, Section 1306.03 provides that "[a] prescription for a controlled substance may be issued only by an individual practitioner who is . . . authorized to prescribe controlled substances by the jurisdiction in which he is licensed to practice his profession and [is] registered . . . . A prescription issued by an individual practitioner may be communicated to a pharmacist by an employee or agent of the individual practitioner."

The West Virginia Code of State Rules governing the West Virginia Board of Medicine provides in part: "The Board may . . . place a licensee on probation, suspend a license, limit or restrict a license or revoke any license issued by the Board, upon satisfactory proof that the licensee has . . . [d]elegated professional responsibilities to a person whom the licensee knew or

had reason to know is not qualified by training, experience or licensure to perform the responsibilities."

In other words, only an individual practitioner who is authorized to prescribe controlled substances and is appropriately registered may prescribe a controlled substance. A prescription may be communicated to a pharmacist by an agent of the individual practitioner, but only upon the order of the individual practitioner. A physician who delegates prescription-ordering authority to an unauthorized, unregistered individual is in violation of Federal and State regulations.

<u>Ongoing Physician-Patient Relationship with Patients<br>to Whom Controlled Substances are Prescribed</u>

The West Virginia Code of State Rules governing the West Virginia Board of Medicine provides in part: "The Board may . . . place a licensee on probation, suspend a license, limit or restrict a license or revoke any license issued by the Board, upon satisfactory proof that the licensee has . . . [e]ngaged in . . . [a] practice of providing treatment recommendations relating to issuing prescriptions . . . for persons without establishing an ongoing physician-patient relationship where in the physician has obtained information adequate to support the prescription. . . ."

In other words, a physician may not prescribe controlled substances to a patient with whom they do not have an ongoing relationship. A physician who prescribes controlled substances to

a patient whom they do not have an ongoing physician-patient relationship is in violation of State regulations.

This case is not about whether the defendants, Krishan Kumar Aggarwal and/or Cherian John, acted negligently or whether they committed malpractice.   Rather, in order for you to find a defendant guilty of the crimes charged in the indictment, you must find that the government has proved beyond a reasonable doubt that that defendant conspired to distribute suboxone beyond the bounds of medical practice, as charged in Count One, and that that defendant aided abetted the distribution of suboxone beyond the bounds of medical practice, as charged in Counts Five through Eleven as to defendant Krishan Kumar Aggarwal and Counts Twelve through Sixteen as to defendant Cherian John.

When a defendant voluntarily and intentionally offers an explanation and makes some statement tending to show his innocence and the explanation of the statement later is shown to be false, the jury may consider whether this circumstantial evidence points to a consciousness of guilt.

You may also consider, as evidence of consciousness of guilt, a specific statement made by the defendants, Krishan Kumar Aggarwal and/or Cherian John, denying guilt or involvement, if you find that the statement was not true.

Conduct of a defendant, including statements knowingly made and acts knowingly done, may be considered by the jury in light of

all the evidence in the case in determining the guilt or innocence of that defendant.

Whether or not evidence as to a defendant's voluntary explanation or statement points to a consciousness of guilt and the significance to be attached to any such evidence are matters exclusively within the province of the jury.

A statement or an act is knowingly made or done if made voluntarily and intentionally and not because of mistake or accident or other innocent reason.

### VII.   General Instructions

You will note that the indictment charges that an offense was committed "on or about" or "in or about" a certain date.  The proof need not establish with certainty the exact date of the alleged offenses.  It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offenses were committed on a date reasonably near the date alleged.

An act is done "knowingly" if done voluntarily and intentionally and not because of mistake or accident or other innocent reason.

The purpose of adding the word "knowingly" is to insure that no one will be convicted for an act done because of mistake, or accident, or other innocent reason.

"Unlawfully" means contrary to law.  To do an act "unlawfully" means to willfully do something which is contrary to law.

Ordinarily, knowledge or intent may not be proven directly because there is no way of fathoming or scrutinizing the operations of the human mind. However, you may infer a defendant's knowledge or intent from the surrounding circumstances. You may consider any statement made by a defendant and all other facts and circumstances in evidence which indicate his state of mind.

You may consider it reasonable to draw an inference, finding that a person intends the natural and probable consequences of acts knowingly done.

It is solely for the jury to determine what inferences, if any, should be drawn from the evidence received in this case.

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You have noticed that we do have an official court reporter making a record of the trial. However, as I mentioned earlier, we will not have typewritten transcripts of this record available for use in reaching your decision in this case.

Remember at all times, you are not partisans. You are judges — judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Some of you jurors have taken notes during the course of this trial. Notes are only an aid to memory and should not be given precedence over your independent recollection of the facts. A juror who did not take notes should rely on his or her independent recollection of the proceedings and should not be influenced by the notes of other jurors.

There is nothing peculiarly different in the way a jury should consider the evidence in a criminal case from that in which all reasonable persons treat any questions depending upon evidence presented to them. You are expected to use your good sense; consider the evidence in the case for only those purposes for which it has been admitted and give it a reasonable and fair construction, in the light of your common knowledge of the natural tendencies and inclinations of human beings.

As I mentioned at the start of this trial, you are not to concern yourself with the sentence that a defendant might receive if you should find him guilty. Your function is solely to decide

whether that defendant is guilty or not guilty of the charge against him.  If, and only if, you find a defendant guilty of the charge against him will it become the duty of the Court to pronounce sentence.

If the accused is proved guilty of the crimes alleged in the indictment beyond reasonable doubt, say so.  If not so proved guilty, say so.

If any reference by the Court or by counsel to matters of evidence does not coincide with your own recollection, it is your recollection which should control during your deliberations.

Upon retiring to the jury room, you will select one of your number to act as your foreperson.  The foreperson will preside over your deliberations and will be your spokesperson here in Court.

The forms of verdict has been prepared for your convenience.

(FORMS OF VERDICT READ)

You will take these verdict forms to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson complete this form by placing an "x" next to the appropriate word or words which state the verdict upon which you unanimously agree.  The foreperson will then sign and date the form and the jury will then return with your verdict to the courtroom.

If you should desire to communicate with the Court at any time, please write down your message or question and pass the note

30

to the marshal who will bring it to my attention.   I will then respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally.   I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.

Finally, since all of the principal jurors remain qualified to serve, it now becomes my duty to ask the two alternate jurors to stand aside and take a seat in the courtroom.   Once the jurors commence deliberations, I will have some further instructions for the alternate jurors.